1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIAM HELM, et al.

Plaintiffs,

v.

ALDERWOODS GROUP INC.,

Defendant.

No. C 08-01184 SI

**ORDER DENYING PLAINTIFFS'
RENEWED MOTION FOR CLASS
CERTIFICATION**

On October 1, 2010, the Court heard argument on plaintiffs' renewed motion for class certification. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES plaintiffs' motion.

**BACKGROUND**

The subject of this litigation is a wage and hour dispute brought by current and former employees of Alderwoods Group, Inc. ("Alderwoods"), a provider of funerary services. As set forth in detail in this Court's July 29, 2009 Order (Docket No. 174), this action originated with a complaint filed in the United States District Court for the Western District of Pennsylvania, *Prise, et al. v. Alderwoods Group, Inc., et al.*, No. 06-1641. That complaint originally included both state law claims and federal claims under the Fair Labor Standards Act ("FLSA") against Alderwoods and several other related defendants. The district court in *Prise* declined to exercise supplemental jurisdiction over plaintiffs' state law claims, leaving only the FLSA claims. The dismissal of the state law claims resulted in the filing of a class action complaint in the Alameda County Superior Court on December 5, 2007 entitled *Helm, et al. v. Alderwoods Group Inc., et al.*, alleging state law wage and hour claims against

Alderwoods.[1]  On February 27, 2008, defendants removed the action to federal court, invoking this Court's diversity jurisdiction under the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1332(d).

In September 2009, plaintiffs moved to certify this case as a class action, on behalf of "those employees and former employees of defendant who were suffered or permitted to work by defendant and not paid their regular or statutorily required rate of pay for all hours worked."  Second Amended Complaint (SAC) ¶ 19.  Plaintiffs had alleged that Alderwoods implemented eight nationwide policies, as set forth in a policy manual and policy memoranda disseminated to all Alderwoods funeral homes, that deprived plaintiffs of adequate compensation for time worked.  Plaintiffs defined eight separate classes, one for each of the alleged violations contained in the nationwide policies.  These policies were: failing to compensate employees for time spent (1) "on-call," (2) performing "community work," (3) attending mandatory training, or (4) meeting with clients to discuss "pre-need purchases"; (5) requiring employees to work during meal breaks; (6) refusing to pay overtime unless it had been pre-approved; (7) directing employees not to record their hours for all time worked; and (8) failing to correctly calculate an employee's regular rate of pay for purposes of determining his or her overtime rate.

On December 29, 2009, the Court denied plaintiff's motion for class certification.  Although plaintiffs presented a factual question common to all members of the putative class — whether the allegedly company-wide policies existed — the Court found that common questions did not "predominate over any questions affecting only individual class members."  Fed. R. Civ. P. 23(b)(3). Some claims depended on individualized answers as to whether and when the allegedly nationwide policies were implemented in each location, and with regard to which categories of employees.  Other claims required the resolution not merely of whether there was a uniform policy requiring the performance of certain types of work, but rather how individual employees were compensated for that work.  The case would also have required inquiry into specific details of different state laws regarding, for example, the licensing of funeral directors.

---

[1]  Plaintiffs have dismissed their claims against all defendants originally named in this case other than Alderwoods Group, Inc.  A related case, *Bryant v. Service Corporation International*, No. 08-1190, is pending in this Court against the entity that purchased Alderwoods in 2006.

1    Presently before the Court is plaintiffs' renewed motion for class certification. Though still

2 relying on the allegations contained in their Second Amended Complaint, Plaintiffs have limited their

3 certification motion to three claims, brought by three classes of California employees. Plaintiffs request

4 that the remainder of their claims be dismissed without prejudice. They also move for Thomas &

5 Solomon LLP and Margolis Edelstein to be appointed as co-lead class counsel.[2]

6

7 **I.    Community Work Class**

8    Plaintiffs define the first proposed class as follows:

9    Current and former hourly employees of Alderwoods who worked in the job titles
     Apprentice Funeral Director/Embalmer, Arranger, Assistant Funeral Director, Community
10   Relations Director, Funeral Director/Embalmer, Funeral Director, and Location Manager
     at any Alderwoods location [in California] during the relevant limitations period and were
11   encouraged or required to perform "Community Work" so as to increase revenue for
     Alderwoods but were not compensated by Alderwoods for such time spent engaging in
12   community work outside regular work hours.

13 Pl. Mot. at 1.[3]

14    Plaintiffs argue that community work is a work requirement—and is even listed as a job duty

15 in the job descriptions—of those categories of employee included in the proposed class. Pl. Ex. 2. As

16 evidence of defendant's systematic failure to pay those employees, plaintiffs have submitted an email

17 from a South Carolina-based Alderwoods Market General Manager stating that community work

18 undertaken "during the normal work day . . . is mandatory and the employee would be paid his or her

19 normal rate," but that community work undertaken "after hours" is only "strongly encouraged and may

20 be recognized in a non monetary way." Pl. Ex. 20. Plaintiffs also argue that even if defendant did not

21

22    [2] Plaintiffs and defendants in this action are represented by the same lawyers, respectively, as
are the plaintiffs and defendants in the related *Bryant v. Service Corporation International* action.
23 Motions to certify were filed both in this action and in the *Bryant* action on September 28, 2009. The
motions in this action were heard first, and on December 29, 2009, certification was denied. At that
24 point, plaintiffs withdrew the then-pending class motion in *Bryant*. Six months later, in June, 2010,
plaintiffs filed a renewed motion for certification in this action, and a month after that refiled the motion
25 to certify in *Bryant*. Both the motion in *Bryant* and the instant renewed motion for certification have
now been argued and fully briefed. The cases raise similar issues and present similar and sometimes
26 overlapping factual backgrounds. The Court decided the motions in *Bryant* first, and relies on the
analysis in that order as foundational to the decision in this case.

27    [3] In their renewed motion, plaintiffs requested nationwide certification for this class. After a
hearing on a certification motion in the related case *Bryant*, plaintiffs filed a reply brief in which they
28 limited their request to certification of a California class.

3

**United States District Court**
For the Northern District of California

1  have a specific policy of not paying employees for after hours community work, it is nonetheless liable

2  for failing to compensate because it made no efforts to investigate or monitor whether its policies and

3  practices complied with the law. In support of this argument, plaintiffs rely on evidence that defendant

4  lacked a specific policy instructing employees to record time devoted to community work outside their

5  regular work day (although defendant did have a general directive to record all hours worked). Collins

6  Depo., Pl. Ex. 54, at 225:2–226:15; Mayes Depo., Pl. Ex. 63, at 75:9–18; Berryhill Depo., Pl. Ex. 50,

7  at 146:25–148:21. Plaintiffs also point to a detailed description of the community work requirement

8  in a company-wide initiative called the Community Leadership Program ("CLP"), which fails to

9  mention that employees should be compensated for community work performed outside of regular work

10  hours. Berryhill Depo., Pl. Ex. 50, 144:25–147:3; Pl. Exs. 6–12.

11

12  **II.     On-Call Class**

13          Plaintiffs define the second proposed class as follows:

14          Current and former hourly employees of Alderwoods who worked at any Alderwoods
         location [in California] and were paid piece rate payments for certain tasks performed
15         during their on-call shift without basing the payment on the actual time spent performing
         such tasks.

16  Pl. Mot. at 2.[4] From plaintiffs' arguments, it appears that this class is meant to be limited to those who

17  worked on call shifts in addition either to eight-hour days or forty-hour weeks, such that all on call work

18  was overtime work. Additionally, not only were the class members paid lump sum premiums that were

19  not based on the actual time spent performing the tasks, they were paid instead of (rather than in

20  addition to) hourly wages.

21          As evidence that defendant had a policy of piecework pay, plaintiffs point to audits identifying

22  "systemic" problems as early as 2004, as well as the payroll records of individual plaintiffs. They argue

23  the policy lasted until at least March 2006. Citing 29 C.F.R. § 778.310, they argue that this policy itself

24  was illegal, no matter how much each employee was compensated individually.

25

26

27          [4] In their renewed motion, plaintiffs requested nationwide certification for this class. After a
    hearing on a certification motion in the related case *Bryant*, plaintiffs filed a reply brief in which they
28  limited their request to certification of a California class.

4

1 **III.    Meal Break Class**

2       Plaintiffs divide the third proposed class into two subclasses that they define as follows:

3 **Subclass 1:**  Current and former hourly employees of Alderwoods who worked at an
Alderwoods location in California and did not receive an uninterrupted 30 minute meal
4 period.

5 **Subclass 2:** Current and former hourly employees of Alderwoods who worked at an
Alderwoods location in California and were not compensated for their full meal period
6 when their meal period was interrupted.

7 Renewed Motion at 2.  At the October 1 hearing, plaintiff explained that both subclasses would have

8 a claim for a one-hour pay "penalty" that California assesses against employers who fail to provide an

9 uninterrupted lunch break.  The latter subclass would also have a claim for full compensation for the

10 thirty minute period that was interrupted rather than only for the actual time of the interruption.

11       As evidence of interrupted lunch breaks, plaintiffs point to defendant's "seamless service"

12 program, which allegedly required employees to interrupt their lunch breaks to answer calls and assist

13 customers.  Carswell Depo., Pl. Ex. 53, 98:25–100:25; Escobar Depo., Pl. Ex. 57, 143:15–144:25; Bath

14 Depo., Pl. Ex. 49, 106:11–106:18; Long Depo., Pl. Ex. 62, 58:8–58:12, 120:15–121:12; Miles Depo.,

15 Pl. Ex. 65, 285:4–285:21.  This happened either because the locations were too busy to permit

16 employees to take lunch breaks, or because the locations were only staffed by one person.  Pl. Ex. 42

17 at ALD022077.

18       Plaintiffs also cite evidence that defendant compensated employees whose lunch periods were

19 interrupted only for the portion of the lunch break worked, not for the full time required by California

20 law.  Collins, Pl. Ex. 54,  67:6–69:14; Phillips, Pl. Ex. 67, 106:4–107:18 (Western Region VPO);

21 Cardell Decl., Def. Ex. H-6, at ¶ 18 (California Location Manager); Lawrence Decl., Def. Ex. H:33, at

22 ¶ 11 (California Location Manager).

23

24 **LEGAL STANDARD**

25       The decision whether to certify a class is committed to the discretion of the district court within

26 the guidelines of Federal Rule of Civil Procedure 23 ("Rule 23").  *See* Fed. R. Civ. P. 23; *Cummings*

27 *v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003).  A court may certify a class if a plaintiff demonstrates that

28 all of the prerequisites of Rule 23(a) have been met, as well as at least one of the requirements of Rule

23(b). *See* Fed. R. Civ. P. 23; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

A plaintiff seeking certification must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the court must focus solely on whether the requirements of Rule 23 are met, not whether the plaintiff has stated a cause of action or will prevail on the merits. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). Accordingly, the court must accept as true the substantive allegations made in the complaint. *In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982). However, although the court may not require preliminary proof of the substance of the plaintiff's claims, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements," but may also "consider the legal and factual issues presented by plaintiff's complaint." 2 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.26 (4th ed. 2005). The court should conduct an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

## DISCUSSION

### I.     Community Work Class

Rule 23(a)'s first requirement is that a class be sufficiently numerous that it would be impracticable to join all members individually. Where "the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3.3 (4th ed. 2002). Classes with

United States District Court
For the Northern District of California

1  relatively small membership are regularly certified. *See Jordan v. Los Angeles*, 669 F.2d 1311, 1319

2  (9th Cir.) (thirty-nine class members), *vacated on other grounds*, 459 U.S. 810 (1982).

3  To demonstrate numerosity, plaintiffs point to an estimate that over 2,500 non-exempt

4  employees worked at Alderwoods locations in California from December 3, 2003 through February 28,

5  2008. Schmuck Decl., Pl. Reply Decl. Ex. 3, at ¶¶ 8–9, 11-12. This number, they conclude, is

6  "common sense" evidence that the proposed class is sufficiently numerous.

7  However, plaintiffs' proposed class comes from a pool of California employees holding seven

8  job titles, not from a pool of all non-exempt employees. Plaintiffs provide no evidence that would

9  enable the Court even to estimate how many California non-exempt employees held these job titles

10  during the relevant period of time. Additionally, the proposed class consists only of those employees

11  who performed uncompensated after-hours community work. Plaintiffs have presented evidence of only

12  *one employee* who held one of the in-class job titles and claims to have performed uncompensated after-

13  hours community work. Escobar Depo., Pl. Ex. 57, 135:4–135:6. Moreover, plaintiffs have presented

14  evidence from one manager that a vast majority of employees in the six offices with which he was

15  familiar disregarded the community work requirement entirely. Kamanski Depo., Pl. Ex. 60,

16  146:8–146:14. And defendant has presented evidence of employees who held the job titles but did not

17  perform uncompensated after-hours community work and therefore would not be included in the class.

18  *E.g.* Maldonado Decl., Def. Ex. H-36, ¶ 17; Messier Decl., Def. Ex. H-39, ¶¶ 9–10. Plaintiffs are asking

19  the Court to make a logical numerical leap that neither their allegations nor their evidence can support.

20  Moreover, as is discussed at some length in the related *Bryant* order, plaintiffs cannot point to

21  a company-wide written policy, and do not point to a company-wide practice, regarding non-payment

22  for community service work. Liability for underpayment of any class member could only be

23  demonstrated after individualized inquiry as to that employee's work history, and would reflect specific

24  – and potentially idiosyncratic – instructions by location managers. Under these circumstances,

25  common questions would not predominate.

26  Under these circumstances, the Court DENIES certification of the Community Work Class.

27

28

7

## II.    On-Call Class

Plaintiffs' theory for the On-Call Class is that it was illegal to pay piece rate premiums rather than an overtime hourly rate, no matter how much compensation each individual employee actually received.  This presents a common question of law.  Nonetheless, individual questions predominate. Plaintiffs do not allege that defendant had a state-wide policy *not* to pay hourly wages for overtime on-call work.  Rather, they present some evidence that this payment method was a systemic problem.  But liability depends on *why* it was a systemic issue:  because employees were told not to record the hours or for some other reason.  The evidence that is currently before the Court indicates that the answer to this question will vary from location to location, depending on the idiosyncratic instructions given by different supervisors.  *See, e.g.,* Maldonado Decl., Def. Ex. H-36, ¶ 6 ("[California's Lakewood Funeral Home e]mployees keep track of their hours spent on after-hours removals, are compensated for those hours, and receive a $35 bonus per removal on top of their hourly wages.").

Plaintiffs argue that payroll records prove that this method of compensation was done statewide, as they list earnings for "regular" work in a way that includes number of hours worked, but that they list earnings for "piecework" without including the number of hours worked.  *See, e.g.,* Helm Payroll Records, Pl. Ex. 26.  However, it is not clear from the payroll records — which include a separate line for overtime hours — that defendant's failure to list the hours worked on piecemeal tasks immediately next to the piecemeal premiums received means that the time taken to perform the tasks was not listed elsewhere and compensated at an hourly rate.  Rather, it is only through proffers from different employees as to whether they reported any of the on call hours that they worked as overtime hours that the payroll records can be interpreted.  As discussed above, some employees *were* paid an hourly wage for overtime on call work.  *See, e.g.,* Maldonado Decl., Def. Ex. H-36, ¶ 6.  Even if these employees are not members of the class, their declarations undermine plaintiffs' argument that they can show a statewide policy via the payroll records.  Plaintiffs have failed to show that liability is susceptible to common proof, and thus they have failed to show that common issues predominate.  The motion to certify the On-Call Class is DENIED.

8

1 **III.    Meal Break Class**

2     **A.    Uninterrupted lunch breaks**

3     Defendant first argues that California law regarding lunch breaks is in a state of flux at this time,

4 counseling against certification of this subclass.  The Court disagrees.  To quote a sister court, the legal

5 uncertainty regarding an employer's obligation with respect to meal periods under California law "has

6 been a recent source of heartburn for courts." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 637–38

7 (S.D. Cal. 2010).  However, even though this question "is presently before the California Supreme Court

8 in *Brinker Restaurant v. Superior Court*, until that decision has issued this Court must proceed as best

9 it can." *Id.* at 638; *see also Brinker Restaurant Corp. v. Super. Ct.*, 165 Cal. App. 4th 25, 31, *review*

10 *granted*, 85 Cal. Rptr. 3d 688 (2008).

11     In the circumstances of this case, the Court finds that this subclass cannot be certified.  Plaintiffs

12 argue that defendant's "seamless service" rule is a policy that fails to provide for meal breaks, and

13 therefore defendant violated its affirmative duty under California law.  Upon closer examination,

14 however, it is clear that it is not the seamless service policy itself that allegedly violated California law,

15 but rather how that policy was enacted in various locations given the specific employment levels and

16 workload in those locations. *See* Cardell Decl., Def. Ex. H-6, ¶ 17 ("Lunch breaks are staggered at the

17 location so that someone is available to answer the phone"); *id.* ¶ 18 ("I will ensure that the employee

18 either receives thirty-minutes of uninterrupted time or that he or she is compensated for the time worked

19 during his or her meal break"); Dias Decl., Def. Ex. H-13, ¶ 17 ("Meal breaks are staggered . . . .").

20     Plaintiffs' attempt to analogize this case to *Ross v. U.S. Bank National Association* fails.  In

21 *Ross,* the defendant had a security policy of having at least two employees on duty at all times, as well

22 as a practice of scheduling only two employees to work on Sundays, and the plaintiffs limited their class

23 to Sunday shift workers. C 07-2951, 2009 WL 4282426, at * 6–* 7 (N.D. Cal. Nov. 25, 2009).

24 Although not all plaintiffs worked shifts where only two employees were scheduled to work, and thus

25 individual questions would arise in the case regarding liability, the limited scope of the class ensured

26 that "significant common questions of law and fact" would first need to be answered. *Id.* at * 9.

27     Here, plaintiffs have not presented any evidence as to how often defendant employed either only

28 one worker at a location, or did not employ enough workers to address the needs of company clients

9

1   without cutting into the workers' lunch break. Nor is the class defined in a way that might account for

2   staffing and work levels. Thus, even reading California law to require an employer to affirmatively act

3   to make a meal period available where the employee is relieved of all duty, the Court has no way to

4   know whether common questions or individual questions will predominate. Rather, it appears that

5   individual-by-individual, location-by-location analysis will be required to determine liability. Plaintiffs

6   have not met their burden with regard to this subclass.

7

8   **B.      Compensation for interrupted lunch breaks**

9          This subclass faces the same problems as the first subclass, plus additional problems due to

10  defendant's evidence that some California employees received hour-long lunch breaks. *E.g.* Obenauf

11  Decl., Def. Ex. H-41, ¶¶ 13–15 (all employees were supposed to have a one-hour lunch break; they

12  typically received an uninterrupted meal break; and they almost always received at least thirty minutes

13  of uninterrupted break time). Some hour-long-lunch employees are included within this subclass, even

14  though under plaintiffs' legal theory, failure to compensate those plaintiffs for an interrupted lunch

15  break would not give rise to liability unless they failed to receive an uninterrupted thirty-minute break.

16  Plaintiffs have not met their burden to show that common questions will predominate.

17

18  **IV.    Superiority**

19         Finally, under Rule 23(b)(3), plaintiffs must also show "that a class action is superior to other

20  available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

21  "Where classwide litigation of common issues will reduce litigation costs and promote greater

22  efficiency, a class action may be superior to other methods of litigation." *Valentino*, 97 F.3d at 1234.

23         Here, the liability of defendants for any of the claims made will depend on the resolution of

24  factual questions employee-by-employee, office-by-office. Trial of all these claims together would

25  neither reduce litigation costs nor promote greater efficiency. To the contrary, any jury trial of this

26  matter would devolve into an endless series of mini-trials, with respect to liability as well as damages.

27  Accordingly, plaintiffs' motion for certification of these classes is DENIED.

28

**CONCLUSION**

For the foregoing reasons, the Court DENIES plaintiffs' renewed motion for class certification. (Doc. 256.) Therefore, the Court need not reach plaintiffs' motion for Thomas & Solomon LLP and Margolis Edelstein to be appointed as co-lead class counsel.[5]

**IT IS SO ORDERED.**

Dated: March 9, 2011

SUSAN ILLSTON
United States District Judge

**United States District Court**
For the Northern District of California

---

[5] Because plaintiffs' request to have the remainder of their claims dismissed without prejudice appears to have been contingent on the Court certifying a class action, the Court will not dismiss those claims at this time.

11